UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

CASE NO. 9:10-CV-80656-KAM

SPORTING PRODUCTS, LLC
and MARK W. COOK,

        Plaintiffs,

v.

PACIFIC INSURANCE
COMPANY, LTD.,

        Defendant.

_____/

### PACIFIC INSURANCE COMPANY, LTD.'S REPLY TO PLAINTIFFS' OPPOSITION TO PACIFIC'S MOTION TO STRIKE EDWARD LEE BURKE AS EXPERT WITNESS

    In opposition to Pacific's Motion to Strike Plaintiffs' insurance expert, several issues have been raised.

**1.**     **Qualifications**

    The first issue they have raised is whether or not Mr. Burke is, in fact, qualified to testify as an expert witness in this matter. Obviously, that is not a question that can be answered in the abstract, but must be measured in terms of the particular area of expertise where the expert is expected to testify. It is a threshold responsibility of the trial court to determine the admissibility of expert testimony, and in doing so the court must ensure that speculative, unreliable opinions do not reach the jury. *Hendrix v. Even Flow Co., Inc.*, 255 F.R.D. 568, 578 (N.D. Fla. 2009).

    In the past, Mr. Burke has testified as a standard of care witness in an errors and omissions case involving the duties of an insurance agent or broker. Given his extensive history

as an insurance salesman working as an insurance agent and broker, if he was being offered for that purpose, Pacific would have no objection to his expertise.

Instead, he is being offered as an expert to testify concerning the interpretation of the insurance policy and the intent of the underwriters, an area in which he has zero experience. Mr. Burke has never worked as an underwriter. As reflected in his CV (attached to their Opposition as Exhibit A), in fact, Mr. Burke has never worked for an insurance carrier. Mr. Burke has never served on an academic staff or even taught insurance courses to insurance agents. Mr. Burke has never lectured as an expert in the field of insurance policy interpretation or underwriter's intent. Exhibit A, Deposition of Edmond Burke ("Burke") p.22.

The closest thing to a credential in this area of expertise that he can point to is his involvement in writing specialty programs for firefighters until the 1990s. What specialty programs for firefighters have to do with a program for collectible weapons remains unanswered. In fact, they defend his opinions as only discussing custom and practice in the industry. Unfortunately, the only industry that Mr. Burke is an expert in, and whose customs and practices he can address, is that of an insurance salesman. Exhibit A, Burke pp. 25-27.

2.  **Plaintiffs Next Assert that Mr. Burke's Testimony can Assist the Court in Interpreting the Meaning of the Policies.**

Frankly, even if qualified, that is not his job. It is instructive that one of the very cases Plaintiff cites to try to encourage the Court not to grant this motion, illustrates the futility of the Court complying.[1] The Plaintiff cites to an Order in *Monticello v. City of Miami Beach*, which is attached as Exhibit C to their Memorandum of Law. In the Order Judge Gold denied a Motion to

---

[1] Plaintiffs' reliance on *Monticello* to argue this motion is premature is not only disproven by the history of that case, it is a threshold responsibility of the Court to determine admissibility and preclude such improper evidence. *Ramjeawan v. Bank of American Corp.*, No. 09 – 20963-CIV, 2010 WL 1645097 at *1 (S.D. Fla. Apr. 21, 2010); *Hendrix v. Evenflo Co., Supra.*

2

Strike Without Prejudice an insurance expert. What they elected not to disclose to the Court is that Judge Gold later had occasion to revisit that very issue in *Monticello Ins. Co. v. City of Miami Beach*, No. 06-20459-CIV, 2009 WL 667454 at *10 (S.D. Fla. Mar. 11, 2009). What Judge Gold concluded concerning the utility of this type of expert testimony should be instructive to this Court, as well:

> Having permitted the Plaintiff's expert and other parole evidence in light of this authority, I nonetheless conclude that it ultimately is not useful to the Court in ascertaining the meaning of the ambiguous language. The Plaintiff's evidence is not sufficiently persuasive or conclusive as to original intent, or that industry customs and usages were directly reflected in the parties' mutual understanding concerning a limited scope of coverage.

*Id.* at *10. (Note parole evidence was considered solely after a prior finding of ambiguity).

The Plaintiffs seemingly give great weight to a magic phrase they perceive allows this type of testimony. It relates to "industry customs and practices," rather than invades the Court's province of interpreting the policy. In fact, at page 11, they cite *Travelers Indemnity Co. of Illinois v. Royal Oak Enterprises, Inc.*, 2004 WL 3770571 (N.D. Fla. 2004), for this distinction. But what the Plaintiffs obviously missed about the *Royal Oak* opinion, as well as the *Kearney* opinion discussed on the same page, is that they relate to totally different issues than the construction of a policy of insurance.

In *Royal Oak* the questions before the court dealt with whether or not Travelers had properly carried out its duty to defend by engaging competent defense counsel, issues related to whether there was a conflict of interest, issues related to the requirement of engaging or paying for independent counsel, as well as issues of bad faith and the reasonableness of attorney's fees. Unlike Plaintiffs' expert in this case, the expert in that case had experience working for insurance carriers, assigning defense counsel, monitoring their activities, and paying their fees, and therefore was viewed as qualified to testify to those issues. The expert was not being asked to

3

render opinions concerning coverage interpretation or coverage terms. Similarly, the *Kearney* case involved issues related to bad faith claims handling under section 624.155, Florida Statutes, the first party bad faith statute, not policy interpretation.

One of the key questions presented is when is the court able to entertain parole evidence? Plaintiffs seem to accept the basis premises of Florida law, well outlined in *Office Depot, Inc. v. National Union Fire Ins. Co. of Pittsburgh, Pennsylvania*, 734 F. Supp. 2d 1304, 1314 (S.D. Fla. 2010. Those are that the interpretation of insurance policies is a question of law for the court. Clear and unambiguous policy terms should be given their plain, ordinary and generally accepted meaning. Courts must not construe insurance policy provisions in isolation but instead should read all terms in the light of the policy as a whole with every provision given its full meaning and effect.

It is at this point though that, apparently, Plaintiffs misperceive the role of the court versus the role of an expert. What Florida law requires is that, if insurance policy provisions are ambiguous and cannot be reasonably reconciled, then well established rules of construction must be applied. Policy provisions are to be liberally construed in favor of the insured and against the insurer. However, the rule of adverse construction is only used if the parties intent cannot otherwise be determined from a plain reading of the policy. *Id.* at 1314.

Plaintiffs continue to misapprehend and misrepresent the critical role of ambiguity as a prerequisite to expert testimony. They assert, for example, that Pacific's citation to *Clarendon America Ins. Co. v. Bayside Restaurant, LLC,* No. 05-CIV-1666, 2006 WL 2729486 (M.D. Fla.

Sept. 25, 2006) misrepresents Illinois law as Florida law. Opposition memorandum at p.8; fn.4.[2] While it is true much of the opinion relied on Illinois law, for the proposition cited, that insurance policy interpretation, including determining ambiguities, is an issue of law to be decided by the Court, there was no conflict as demonstrated by the Court citing both Illinois and Florida authority. 2006 WL 2729486 at *1

One of the key distinctions concerning when parole evidence is allowed is between latent and patent ambiguities. Contrary to Plaintiffs' statement at page 5 of their memorandum, Florida courts have not moved away from this critical distinction. As discussed by Judge Marra in the *Office Depot* case, if the ambiguity is "patent," i.e., it appears on the face of the contract, the court can resolve the ambiguity as a matter of law. However, where the contract language is rendered ambiguous by some collateral matter, it involves a latent ambiguity, and extrinsic evidence may be used to determine the intent of the parties and resolve the ambiguity. *Id.* at 1314-15. The extent of Plaintiffs' confusion is demonstrated by the fact that it describes the issue of what constitutes an "unscheduled premise" as a "latent ambiguity." *See* page 6 of their memorandum.

This is not a latent ambiguity, since it simply involves the court's construction of an insurance policy term. An example of a latent ambiguity would be if there was a policy

---

[2] Footnote 4 of the Plaintiffs' opposition serves no useful purpose and instead attempts to cast aspersion on Pacific's counsel. It bears mention that in the *Clarendon* case cited by Pacific: 1) while *Clarendon* argued that Illinois law should apply in its initial motion for summary judgment, no ruling applying Illinois law was entered at the time the affidavit of the insurance "expert" was stricken. Clarendon's position in its initial summary judgment motion was that the result would be the same under both Illinois and Florida law; 2) in opposing Clarendon's motion to strike, the defendant cited cases from the United States Supreme Court, the Second and Ninth Circuit Federal Courts of appeal, Florida and Illinois; and, 3) in striking the expert opinion, the Court relied upon *Montgomery v. Aetna Cas. & Sur. Co.*, 898 F.2d 1537 (11th Cir. 1990), wherein the court, applying Florida law, found that the trial court erred in admitting into evidence the testimony of an expert opining on Aetna's duty to defend.

provision that only afforded insurance coverage for goods at "the insured's principal place of business." On its face, there does not appear to be any ambiguity, since coverage is clearly restricted to "the insured's principal place of business." The problem is presented if the insured has more than one place of business. Which is the principal one? It is with that type of latent ambiguity where extrinsic evidence is allowed to be introduced to establish which of all of the Plaintiffs' places of business is the principal place of business.

So, Plaintiffs are simply wrong, first in claiming that the latent-patent distinction is somehow obsolete, and second in claiming that this is a latent ambiguity. Neither is true. We have already discussed the *Monticello* case where Judge Gold realized, after denying a motion such as the current one, that custom and practice testimony is useless when it does not go directly to reflect the parties' mutual understanding concerning the limited scope of coverage. 2009 WL 667454 at *10.

There are courts that have considered extrinsic evidence when there is a specific finding that the policy at issue is ambiguous, and therefore susceptible of more than one reasonable interpretation. But even then, it is only when the extrinsic evidence goes to the intent of the insurer and the insured at the time that the policy was purchased that it is admissible. *Williams v. Essex Ins. Co.*, 712 So. 2d 1232, 1232 (Fla. 1st DCA 1998). *See also RTG Furniture Corp. v. Industrial Risk Insurers*, 616 F. Supp. 2d 1258, 1266 (S.D. Fla. 2008) (where the extrinsic evidence addressed the disputed role of the insured's broker in drafting the policy and agency issues relative to his participation in the policy negotiation process).

Once again, Plaintiffs misapprehend the proper role of such evidence under the limited circumstances where it is allowed. There is no claim here that the insured or its broker was involved in drafting any of the policy language at issue in this matter.

14518389v1 0906185 00071

The last argument the Plaintiffs present is perhaps the most alarming, and the one that shows the depths of their confusion concerning the proper role of such testimony in this case. They argue that Mr. Burke's testimony will not confuse or prejudice the jury. Under none of the circumstances, and no matter how ambiguous the policy language may be, will a jury ever be invited to usurp the Court's role of interpreting the insurance policy. *Graber v. Clarendon nat. Ins. Co.,* 819 So. 2d 840, 842 (Fla. 4th DCA 2002) The role of a jury in an insurance coverage case is to establish <u>facts</u> that the court may then apply the insurance coverage after making whatever interpretations the Court feels are necessary, including the resolution of ambiguities. *Montgomery v. Aetna Cas. & Surety Co.,* 898 F.2d 1537, 1541 (11th Cir. 1990). For example, the Plaintiffs are claiming that these losses go back over 2-1/2 policy periods, yet themselves claim to have no knowledge of any losses until Litt went into Administration. It would be a question for the jury to determine factually, assuming they have a proper basis to do so, when a particular loss occurred. The Court then can utilize those factual findings in making a determination of coverage. The jury should never be placed in a position where Mr. Burke will be testifying to them about how to interpret coverage provisions so that they can apply the coverage in this case. To suggest otherwise is totally contrary to Florida authorities, as outlined above.

## CONCLUSION

Mr. Burke might well be a highly qualified expert if the question concerned the duties and responsibilities of an insurance agent or broker. Unfortunately for the Plaintiffs, none of those matters are relevant in this case, and the focus is on the interpretation of this policy of insurance, which is a proper role for the Court. Although it is true that, under certain limited circumstances after the Court has found that there is ambiguity in the policy, parole evidence can be allowed where it is directly relevant to the development of the direct intent of the parties in

drafting policy provisions including their incorporation of custom and practice. Where, as here, the proposed testimony is nothing more than a discussion of custom and practice in the abstract, totally unrelated to the parties' negotiations, it is irrelevant, and Pacific's Motion to Strike should be granted.

        Respectfully submitted,
        **HINSHAW & CULBERTSON LLP**

        /s/ANDREW E. GRIGSBY
        Joseph R. Miele, Jr.
        Florida Bar No. 426636
        jmiele@hinshawlaw.com
        Andrew E. Grigsby
        Florida Bar No. 328383
        agrigsby@hinshawlaw.com
        One East Broward Boulevard, Suite 1010
        Fort Lauderdale, Florida 33301
        Phone: (954) 467-7900
        Fax:    (954) 467-1024
        Attorneys for Pacific Insurance Company, Ltd.

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on August 25, 2011, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following: Robert H. Friedman, Esq., Cyril E. Smith, Esq., and Danielle L. Lassiter, Esq. rfriedman@gunster.com, csmith@gunster.com and dlassiter@gunster.com, Gunster Yoakley & Stewart PA, 777 South Flagler Drive, Suite 500E, West Palm Beach, Florida 33401.

        By:    /s/ *Andrew E. Grigsby*
                  Andrew E. Grigsby

14518389v1 0906185 00071