UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

CASE NO. 9:10-CV-80656-KAM

SPORTING PRODUCTS, LLC
and MARK W. COOK,

        Plaintiffs,

v.

PACIFIC INSURANCE
COMPANY, LTD.,

        Defendant.

_____/

**PACIFIC INSURANCE COMPANY, LTD.'S REQUEST FOR FEES AND OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL DOCUMENTS AND DISCLOSURES FROM DEFENDANT'S EXPERT, DAVID COWHEARD, WITH INCORPORATED MEMORANDUM OF LAW**

    Defendant, Pacific Insurance Company, Ltd. ("Pacific"), by and through undersigned counsel, hereby files its Opposition to the Plaintiffs' Motion to Compel Documents and Disclosures from Defendant's Expert, David Cowheard, with Incorporated Memorandum of Law, and states:

### INTRODUCTION

    The Plaintiffs' motion is factually and legally baseless and hence should it be denied, Pacific requests its fees and costs pursuant to FRCP 37(a)(5)(B). First, the Plaintiffs' motion is untimely having not been filed within thirty (30) days of Mr. Cowheard's deposition as required by Local Rule 26.1(h). Second, the Plaintiffs are trying to enforce a mere deposition *notice* served on *Pacific* that sought to have a third-party (David Cowheard) produce documents at *his* deposition wherein they never served Mr. Cowheard with a subpoena. Pacific was not being deposed and hence a subpoena was absolutely required in accordance with FRCP 45.

Equally as troubling, however, is that the Plaintiffs now completely disregard the agreements which were reached just prior to the start of Mr. Cowheard's deposition and compound that unexplainable behavior by seeking even more documents than requested in their unenforceable "notice" of deposition. Counsel for Pacific provided exactly what was *agreed* and the Plaintiffs have no legal or factual basis to request anything else.

Finally, the Plaintiffs' counsel was free to question Mr. Cowheard at his deposition on the matters that are the subject of this motion and with minor exception, failed to do so.

## FACTS/PROCEDURAL HISTORY

David Cowheard is a forensic accountant who was retained by Pacific long before this lawsuit to assist it in evaluating the Plaintiffs' insurance claim, specifically, a spreadsheet claiming over 2,000 missing guns. ("Initial Spreadsheet") (See, generally, Exhibit 1, Deposition of David Cowheard, without exhibits, February 23, 2011; and, Tr. at P. 22, L. 20 – P. 23, L.10; DE 110-4, P.16-33) During that process, Mr. Cowheard issued three (3) reports, which were produced to the Plaintiffs in February 2011, during this litigation. (*Id.*); [DE 110-4, and attached Exhibits, D,E and F, at Pages 16-33 of DE 110-4] Mr. Cowheard was extensively examined at deposition about his involvement and his reports on February 23, 2011. (See, generally, Exhibit 1, Deposition Transcript of David Cowheard, February 23, 2011) On May 6, 2011, the Plaintiffs served an Amended Spreadsheet which they now adopted as their damages claim. [DE 110-25] Ultimately, Mr. Cowheard was designated by Pacific as an expert in accordance with Rule 26 and served a report on July 1, 2011. (Exhibit 2, without exhibits/schedules) Throughout this time period, Mr. Cowheard was engaged in activities at the request of Pacific's counsel unrelated to the preparation of his report served on July 1, 2011. (Exhibit 1, Deposition Transcript of David Cowheard, February 23, 2011; Exhibit 3, Declaration of Joseph R. Miele, Esq.)

The Plaintiffs served a deposition notice on July 7, 2011, indicating that the deposition was to proceed on July 15, 2011. [DE 118-4] Attached to the deposition notice was a list of documents that the Plaintiffs wanted *Mr. Cowheard* to bring with him to his deposition. The Plaintiffs never served a subpoena on Mr. Cowheard. *Id.*

Pacific's counsel, Joseph R. Miele, Esq, was communicating directly and exclusively with the Plaintiffs' counsel, Robert Friedman, Esq., as it relates to the scheduling of the depositions of David Cowheard on July 15, 2011 and the deposition of another of Pacific's experts, George Priest, which had been scheduled to take place in Chicago on July 13, 2011.

(Exhibit 3, Declaration of Joseph R. Miele)   A dispute ensued between counsel as it relates to documents that had been requested in a notice of deposition for George Priest. As the dispute escalated, counsel for Pacific advised Mr. Friedman in E-mail exchanges on July 12, 2011, in part: "... I am not aware of any rule that allows you to get documents from an expert by a deposition notice and if a subpoena would have been served, it would have been subject to a Rule 45 objection." (Exhibit 3, Declaration of Joseph R. Miele and attached Exhibit, 3A, E-mail, 2:47p.m.)  Later that same day, at 9:41p.m., counsel for Pacific wrote to Mr. Friedman, in part: "... there is a proper procedure for securing documents and you rejected the opportunity to extend the period to take the depositions by one week". (Id.)  A similar discussion occurred by telephone. (Exhibit 3, Declaration of Joseph R. Miele) At the deposition of George Priest on July 13, 2011 (wherein Mr. Friedman participated by video conference from his office in *West Palm Beach, Florida*), there was further discussion about the need for a subpoena. Mr. Friedman asked Mr. priest if *he* "compl[ied] with the request for documents".  At that point, Pacific's counsel stated: "I am going to object to that, Rob. That assumes that there is a legal basis that requires him to do so, and you and I have been through this." (Exhibit 4, Deposition of George Priest, Tr. at P.8, L.12-16; Exhibit 3, Declaration of Joseph R. Miele)

Nevertheless, no subpoena was served on Mr. Cowheard. Even though no subpoena had been served, Mr. Cowheard brought substantial documentation with him to the deposition, which included billing records.  A discussion ensued as between David Cowheard, counsel for Pacific, Joseph Miele and, counsel for the Plaintiffs, Joseph Curley. (Exhibit 3, Declaration of Joseph R. Miele) Counsel for Pacific agreed to produce billing records related to Mr. Cowheard's expert report, redacted, to exclude items unrelated to the report. (Exhibit 3, Declaration of Joseph R. Miele; Exhibit 6, Deposition Transcript of David Cowheard, July 15, 2011, Tr. at P.104, L.22-P.105,L.4) Mr. Cowheard did not agree to provide any records. (Exhibit 5, Declaration of David Cowheard)

A discussion also ensued over the fact that Mr. Cowheard had reviewed over 20,000 pages of documents (as disclosed in his report), with approximately 20,000 pages of which were produced *by* the Plaintiffs, and all of which the Plaintiffs had. (Exhibit 3, Declaration of Joseph R. Miele; Exhibit 2, Report of David Cowheard dated July 1, 2011, without exhibits)  Mr. Cowheard's report identified the precise documents by category, and further, by specific bates stamp number and/or designation.  The report was served two (2) weeks before the deposition

and at the deposition, Mr. Curley said that he had reviewed the materials "pretty carefully." (Exhibit 6, Deposition Transcript of David Cowheard, July 15, 2011, Tr. at P. 9, L.22-P.23,L.7). Mr. Curley stated before the deposition that he did not need the documents because they had been produced. (Exhibit 3, Declaration of David Cowheard)

The final documents discussed related to reports in other matters over the past four (4) years. Mr. Cowheard informed that one of the matters was subject to an express confidentiality agreement and he did not know if the others had been filed with the Court. Given this discussion and that the matters were disclosed in Mr. Cowheard's report two (2) weeks earlier, Mr. Curley indicated that he would review the Court dockets for the information. (Exhibit 3, Declaration of Joseph Miele; Exhibit 5, Declaration of David Cowheard)[1]

Other than redacted time records, there was absolutely no agreement that any specific documentation would be produced by either Pacific or Mr. Cowheard. (Exhibit 3, Declaration of Joseph Miele; Exhibit 5, Declaration of David Cowheard)

Accordingly, the deposition concluded as follows:

MR. CURLEY:      "…Joe, you are going to get me - -
MR. MIELE:       Time records.
MR. CURLEY:      Right. And whatever other documents you feel are appropriate to produce.

(Exhibit 6, Tr. at P.104, L.22-P.105,L.4)

Thus, not only was there no legal obligation for Mr. Cowheard to produce any documents at his deposition, there was no agreement to do so whatsoever except as it relates to the redacted billing records.

On July 29, 2011 - - exactly as was agreed, counsel for Pacific produced redacted invoices from David Cowheard. (Exhibit 3, Declaration of Joseph Miele and Exhibit 3B). An E-mail dialogue ensued about those documents and later the documents referenced in the deposition notice, including Mr. Cowheard's reports in other matters. Counsel for Pacific reminded the Plaintiffs' counsel of the pre-deposition discussions and agreement (Exhibit 7;

---

[1] As further evidence of the pre-deposition discussions with the Plaintiffs' counsel, Mr. Cowheard was asked about these other matters. In part, he states: "Actually one of the cases *that we were talking about before the depositions started* that I had issued an expert report on… ." (Exhibit 6, Deposition Transcript of David Cowheard, July 15, 2011, Tr. at P. 13, L.14-24)(emphasis added) This sworn testimony very clearly confirms a pre-deposition discussion about such materials.

18517703v1 0906185 00071

August 17, 2011, 3:17 p.m.; E-mail dated August 19, 2011, 7:49 a.m.) and yet this motion nevertheless follows.

## LEGAL ARGUMENT

### I. The Plaintiffs' Motion is Untimely

Local Rule 26.1(h) provides, in part: "All motions related to discovery, including but not limited to compel discovery and motions for protective order shall be filed within thirty (30) days of the occurrence of grounds for the motion". The Plaintiffs complain that Mr. Cowheard's FRCP 26 disclosures were inadequate *and* that *Pacific* failed to have Mr. Cowheard produce documents at *his* deposition. The disclosures were served on July 1, 2011 and Mr. Cowheard's deposition was on July 15, 2011. Mr. Cowheard was also asked about his disclosures at his July 15, 2011 deposition. This motion was not filed until August 23, 2011. The Plaintiffs do not make any effort to justify the late filing.

### II. David Cowheard Disclosed All Information That He "Considered"

The first issue raised by the Plaintiffs is the contention that Mr. Cowheard did not identify information he "considered" as opposed to that which he relied upon. [DE 117 at p.3]. This is not true and it is impossible to decipher the basis for the Plaintiffs' position. Attached as Exhibit A to the expert report of David Cowheard[2] is a Schedule captioned: "DOCUMENTS CONSIDERED". In that schedule, he itemizes the documents by category, *e.g.*, Pleadings and Legal Documents; Depositions; and Discovery. The depositions are enumerated by deponent and date and the "Discovery" is enumerated by specific bates number reference.

Mr. Cowheard was questioned about this Schedule at his deposition:

Q. In your report, as your counsel noted, you have a sheet in there that references the documents that you reviewed in compiling your report.

A. Yes

Q. You are familiar with that. Did you look at anything in addition to that that's not on there?

A. The only thing that is not on there would be the reports that I issued prior to being requested to provide my services as an expert in reviewing the amended claim. Those are exhibits in my first deposition.

Q. And I am familiar with that. ...

(Exhibit 6, Tr. at P.33, L. 24-P.34, L.10)

---

[2] A copy of the report, without attachments is attached hereto as Exhibit 2.

18517703v1 0906185 00071

Earlier in Mr. Cowheard's deposition, there was a discussion between counsel over the documents identified in Mr. Cowheard's Schedule.

| | |
|---|---|
| MR. MIELE: | "And Joe, I don't know if it would be helpful, but I think he put a list of them in the back of his report." |
| MR. CURLEY: | "Yeah, that's fine. And I've seen that." |
| MR. MIELE: | "Again, I'm just trying to be helpful since you are not familiar with the case." |
| MR. CURLEY: | "What's in his report and his --- His documentation I've reviewed pretty carefully. ..." |

(Exhibit 6, P. 9, L. 22 – P. 10, L.7)

A further confirmation and explanation was provided via E-mail exchange between counsel for Pacific, Joseph Miele and counsel for the Plaintiffs, Joseph Curley. It could not have been made clearer that absolutely no other documents were "considered" by Mr. Cowheard, other than disclosed in his report and as he testified at deposition (see above).

Mr. Cowheard also brought documents with him that he believed would assist him in answering the questions of the Plaintiffs' counsel and he was asked (and did) read the bates stamp numbers and/or descriptions into the record. (Exhibit 6, Tr. at P. 34, L.25-P.40, L.14)[3] Among those documents were the reports that were the subject of his prior deposition, which he described as not being identified on Exhibit A. Mr. Curley stated: "Okay. We already have that." (Exhibit 6, Tr. at P. 40, L. 9-11)

Thus, Mr. Cowheard fully disclosed all information that he "considered" as per his deposition testimony, and there is no further information that can be provided.

### III.   The Plaintiffs' Unenforceable and Improper Deposition "Notice"

The Plaintiffs next seek relief wholly unrelated to, and far beyond the scope of, that discovery which is permissible under FRCP 26. Further, they are seeking to compel *Pacific* to produce documents based on a document request attached to a deposition *notice* of David Cowheard, a third-party, without ever having served him with a subpoena. The Plaintiffs go so far as to want Pacific to produce documents from files of Mr. Cowheard unrelated to this case, done on behalf of other clients and attorneys and on different matters.

---

[3] During this portion of the deposition counsel for Pacific also explained the difference in bates stamp numbering. (Exhibit 6, Tr. at P. 36 L.9-P.37 L.3) This explanation was again provided in a subsequent E-mail exchange. (Exhibit 8; E-mail dated August 19, 2011, 7:49 a.m.)

18517703v1 0906185 00071

### A.  Pacific Can Not Be Compelled To Produce Documents of Its Expert by Means of a Mere Deposition Notice

As discussed above, at no point in time whatsoever, did Pacific, its Counsel or Mr. Cowheard make any representation to the Plaintiffs that all of the documents sought in the deposition notice would be provided by David Cowheard without a subpoena and in response to a mere deposition notice. In fact, as referenced above, Pacific's counsel, Joseph Miele, advised the Plaintiffs' counsel, Robert Friedman, that such materials can not be sought by a mere "notice" of deposition in connection with the deposition of another of Pacific's experts, George Priest. Nevertheless, no subpoena was served on Mr. Cowheard.

In short, the Plaintiffs improperly seek to enforce, against Pacific, a mere deposition notice to secure documents from a third-party upon whom they never served a subpoena[4]. FRCP 30(b)(2) applicable to request documents from a *party* at a deposition is not applicable. Rather, the Plaintiffs were required to serve a subpoena deuces tecum on Mr. Cowheard in accordance with FRCP 45.

Case law is in accord that information sought from a non-party expert can not be compelled by way of deposition notice. A non-party can only be compelled to attend a deposition if served with a subpoena pursuant to Rule 45. See, Fed.R.Civ.P. 30(a)(1)[5]; *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 30 n. 16, 104 S.Ct. 2199, 81 L.Ed.2d 17 (1984)("Under Rules 30 and 31, a litigant may depose a third party by oral or written examination. The litigant can compel the third party to be deposed and to produce tangible evidence at the deposition by serving the third party with a subpoena pursuant to Rule 45."); *Westmoreland v. CBS, Inc.*, 770 F.2d 1168, 1175 (D.C.Cir. 1985)("To compel a [nonparty] witness to attend a deposition under Rule 30(a), a party must obtain a subpoena under Rule 45(d)."); see also, *Highland Tank & Mfg. Co. v. PS Intern, Inc.*, 227 F.R.D. 599 (W.D.Pa. 2005)("Rule 45 is the only discovery method whereby information may be obtained from a nonparty to the suit); *Cuthbertson v. Excel*

---

[4] Note 2 in the Plaintiffs' motion states: "Indeed, Defendant has been similarly unresponsive to the Notice of Deposition Duces Tecum to David Cowheard, which is attached hereto as Exhibit "D". That is true. It was not directed at Pacific, and was giving notice of the deposition of David Cowheard. The Deposition Notice, itself, states: "The Deponent is to bring with him the items listed on Exhibit A attached."

[5] Additionally, Rule 30(b)(2) states that "[i]f a subpoena duces tecum is to be served on the deponent, the materials designated for production, as set out in the subpoena, must be listed in the notice or in an attachment." Fed.R.Civ.P. 30(b)(2).

*Industries, Inc.*, 179 F.R.D. 599 (D.Kan. 1998)(court lacked jurisdiction over non-party where non-party had not been served with subpoena but instead appeared voluntarily for deposition); *Gutescu v. Carey Intern, Inc.*, 2003 WL 25589034 (S.D.Fla. 2003)(court had no jurisdiction to hold non-party in contempt where subpoena with which non-party allegedly failed to comply had been issued improperly); see also, *Smith v. Transducer Technology, Inc.*, 2000 WL 1739217 (D.V.I. 2000)(subpoena duces tecum required for non-party expert to produce documents); *First State Bank of Junction City, Kansas v. Deere and Company*, 1991 WL 46375 (D.Kan. 1991)(expert witness not required to produce documents pursuant to a notice to take deposition); *Parrot, Inc. v. Nicestuff Distributing International, Inc.*, Case. No. 06-61231, DE #110 (S.D.Fla. 01/21/2009)(where the Court entered an order holding that it had no jurisdiction over a non-party to compel it to attend its deposition or to produce documents where the non-party was served with a Notice of Deposition Duces Tecum without a subpoena)

In *Smith, supra*, at issue was the plaintiff's Motion for Sanctions for the failure of the defendants' expert witness to bring documents requested in the plaintiff's "First Amended Notice of Expert Deposition". *Id.* at *1 The plaintiff contended that the documents must be produced pursuant to a Notice of Deposition. *Id.* The defendant claimed that production of documents from non-parties may only be compelled by a subpoena duces tecum. *Id.*

The Court agreed with the defendant, stating:

> Fed.R.Civ.P. 34(c) expressly provides that "A person not a party to the action may be compelled to produce documents or things . . . as provided in Rule 45. With regard to non-parties, such as Plaintiff's expert witness, a request for documents may be made by subpoena *duces tecum* pursuant to Rule 45.

*Id.*

Accordingly, the Court found that the plaintiff had not demonstrated any basis for the defendants' expert witness to have to produce documents at his deposition pursuant to the plaintiff's Notice of Deposition without an accompanying subpoena duces tecum. *Id.* at *2

In *First State Bank, supra*, the Court considered the plaintiff's Motion for Protective Order which requested the Court limit the schedule of documents to be produced at the deposition of the plaintiff's expert witness, Mr. Sevart as well as the plaintiff's Motion to Quash Portions of Defendant's Notice Duces Tecum to Take Depositions directed at the Plaintiffs'

expert, Mr. Kelsey. *Id.* at *1 and *8. As to the motion for protective order, the Court discussed the fact that there was no record of service of a subpoena duces tecum upon the expert, stating[6]:

> [The expert] is not a party to this action and is, therefore, not required to appear or produce documents, pursuant to a notice under Fed.R.Civ.P. 30. When parties are deposed, the deposition notice may include a request for documents. The procedure of Fed.R.Civ.P. 34 applies to such a request. Fed.R.Civ.P. 30(b)(5). Under Rule 34, a party is only required to produce documents which are in its possession, custody or control. Clearly, documents in the possession, custody or control of non-party [expert witness] are not in the possession, custody or control of plaintiff just because the [non-party expert witness] is plaintiff's expert witness.

*Id.*

The Court also considered the Motion to Quash as it relates to expert Kelsey. It determined that the Motion for Protective Order and the Motion to Quash "suffer[ed] from the same procedural defects" because a subpoena had not been served. *Id.* at *8. Accordingly, the Court found that the plaintiff's expert was not required to appear at the deposition or produce the documents requested in the Notice Duces Tecum to Take Depositions. *Id.*

In *Karakis v. Foreva Jens Inc.*, 2009 WL 113456 (S.D.Fla. 2009), the plaintiff served on defendants' counsel notices of depositions of defendants' expert witnesses.[7] *Id.* at *2. The experts did not appear and the plaintiff moved for an order prohibiting their testimony at trial and for sanctions. *Id.* The Court noted that the plaintiff did not allege or demonstrate that the experts were parties or officers, directors or managing agents of a party. *Id.* "Therefore, unless the witnesses had consented to appear, Plaintiff was required to have served a subpoena on them and tendered to each a witness fee for one day's attendance and the mileage allowed by law." *Id.*

The Court noted that the plaintiff's counsel was aware at the time the notices were served that a subpoena was required to be served on the expert witnesses because in another case in the Southern District, the same counsel that represented the plaintiff set the deposition of a party's expert by sending the notice to the defendant's counsel. *Id.* Hereto, counsel for the Plaintiffs,

---

[6] The Court denied the Motion for Protective Order apparently because it was not the proper procedure. While not clear from the opinion, it appears that the Court's ruling was based on the fact that there was no subpoena and hence a motion for protective order was not the proper relief.

[7] The defendants identified their expert witnesses in their initial disclosures, but the plaintiffs did not specifically name the experts in the notices of depositions. *Id.*

18517703v1 0906185 00071

Robert Friedman, was aware of Pacific's position that documents could not be compelled from Pacific's experts by a simple deposition notice.

### B. The Plaintiffs are Not Entitled to Additional Billing Records or a Privilege Log

The initial flaw in the Plaintiffs' argument - - as discussed above - - is that David Cowheard was never served with a subpoena. The Plaintiffs now seek even more records that they requested in their unenforceable deposition notice. Document Request Number 9 asks for "all documents relating to the fees which you will charge relating to your status as an expert in this lawsuit." As agreed upon at Mr. Cowheard's deposition, invoices for work related to the expert report were provided which were redacted to exclude other work. And, Mr. Cowheard was extensively examined at his deposition about his expert fees. Rule 26(a)(2)(B)(vi) requires a statement of the compensation to be paid. At page 19-20 of his report, Mr. Cowheard advises that he is compensated on actual hours incurred and that his billing rate is $195. for "fieldwork" and $250. for deposition and trial testimony. The Plaintiffs' counsel, Joseph Curley, asked: "At present how much have you been paid for your work on this case". Counsel for Pacific objected because Mr. Cowheard was retained long ago, pre-litigation. Mr. Curley asked Pacific's counsel what an appropriate question would be, to which Pacific's counsel responded: "Just ask him how much he's been paid for the preparation of his report. And I would expand that to say his analysis of the amended claim."[8] Mr. Curley responded: "Okay, can you answer that?" Mr. Cowheard responded that it was "about $35,000.00". Mr. Curley then asked if that was $35,000.00 before the date of the deposition, to which Mr. Cowheard responded: "No. That's just in analyzing the amended claim and this report. It doesn't count anything I did before that." Thereafter, Mr. Curley stated: "I see. I'm looking forward and you are looking back", and "What do you expect to do going forward". A discussion ensued and Mr. Cowheard estimated that if the matter were go to trial, an additional $50,000. to $60,000. would be a "fair estimate", and that he charges $250. an hour for testimony versus $195. (Exhibit 6, Tr. at P. 49, L.15-P. 51, L.25). The Plaintiffs' counsel had the ability to inquire further and did not do so.

---

[8] Earlier in his deposition when being asked about work on the file, Mr. Cowheard testified that the prior reports referenced above where "prior to being requested my services as an expert in reviewing the amended claim". He thereafter testified that he was now provided an expert report. (Exhibit 6, Tr. at P. 34, L. 6-13)

Following the deposition, counsel for Pacific voluntarily produced to the Plaintiffs those invoices, which were redacted, as expressly discussed prior to and during the deposition for work in connection with the preparation of Mr. Cowheard's report. (Exhibit 3, Declaration of Joseph Miele and Exhibit 3B, E-mail dated July 29, 2011) In accordance with the discussion at the deposition, this e-mail states: "Here are Cowheard's redacted bills. The redacted entries relate to work other than in connection with the expert report done at my request for assistance in the litigation") Consistent with Mr. Cowheard's testimony that his fees were approximately $35,000.00, invoice dated July 9, 2011 is in the amount of $34,606.37. There were only three (3) redactions for time and one (1) redaction for a description of costs.

In addition, Pacific voluntarily produced invoice dated May 11, 2011. This invoice, in actuality, should have been more heavily redacted. Mr. Cowheard's report consisted of a detailed analysis of an Amended Claim Spreadsheet provided by the Plaintiffs on May 6, 2011. Only *one (1)* of Mr. Cowheard's time entries on this invoice post-date May 6, 2011. As to his assistant's time, only *one (1)* entry dated May 10, 2011 relates to the Amended Claim Spreadsheet. The entries prior to May 6, 2011 were disclosed in the spirit of disclosure in that they arguably could be considered to have been incurred as a result of activities ultimately necessary to the expert report.

The Plaintiffs also demand a privilege log for the redacted information. Again, this ignores the fact that there was no subpoena and the documents which were produced were voluntarily provided in full accord with the agreement which had been reached. Further, even assuming that there was some legitimate outstanding dispute, a privilege log is required *only* in the event the withheld information is "otherwise discoverable". FRCP 26(b)(5)(A) The Plaintiffs provided no legal authority for the proposition that all of Cowheard's invoices (unrelated to his expert report) since he began work on behalf of Pacific in 2009 are discoverable, at all. In this regard, counsel for Pacific wrote to counsel for Plaintiffs on August 3, 2011, as follows: "I am not sure that I understand your position. If it is your position that you are entitled to see billing records for everything that he did or the file from the day he began work on the claim in 2009, I do not agree. Please let me know what the basis for that position is." (Exhibit 9, E-mail dated August 3, 2011, 5:55 p.m.) The Plaintiffs never explained their position. (Exhibit 3, Declaration of Joseph R. Miele, Jr.)

The Plaintiffs attach to their motion, E-mails as between counsel for Pacific, Joseph Miele and counsel for the Plaintiffs, Joseph Curly, and make the grandiose (yet mistaken) statement that "Defendant plainly acknowledges that the information is not subject to any claim of privilege." [DE 118-1; 118-2] Properly read, however, the complete E-mail exchange very clearly states that the information is not discoverable in the first instance. There is no concession by Mr. Miele that some privilege might not otherwise apply (Exhibit 3, Declaration of Joseph Miele)

Finally, even if a privilege log would be required, there is no way to do so without disclosing the privileged information. The redacted information is an explanation of services provided. It is impossible to describe such entries without disclosing the work which was done which is itself the privileged information.

### C. The Plaintiffs Are Not Entitled to Cowheard's Work on Other Matters

Again, the Plaintiffs seek documents without a subpoena and which are inconsistent with the express agreement reached prior to the start of Mr. Cowheard's deposition as described above.

Nevertheless, should the Court entertain the substantive merits of the request, a party is not entitled to reports prepared by experts in other cases. See, *Trunk v. Midwest Rubber and Supply Co.*, 175 F.R.D. 664 (D.Colo. 1997)(holding "that conclusions and opinions offered in unrelated litigation do not fall within the scope of Rule 26 discovery"); *Surles v. Air France*, 2001 WL 815522 (S.D.N.Y. 2001)(holding that a party is not entitled to the disclosure of reports in other cases, "only the production of a list of the expert's cases" is required); *In re Air Crash Disaster at Stapleton International Airport, Denver, Colorado, On November 15, 1987*, 720 F.Supp. 1442 (D.Colo. 1988)("The focus of information . . . is on the events giving rise to the litigation at hand and the opinions to be received in evidence during the litigation."); *Jordan v. Pinamont*, 2007 WL 4440894, at *1 (E.D.Pa. 2007)("Rule 26(a)(2)(B) only requires an *expert* witness to produce a *list of cases* in which the expert has provided testimony during the proceeding four years; it does not require the production of expert reports generated in connection with those cases."); *Roberts v. Printup*, 2007 WL 1201461, at *1 (D.Kan. 2007)("Rule 26(a)(2)(B) does not require disclosure of the testimony an expert gave in a prior case")

In *Trunk, supra*, the plaintiff moved for a protective order to quash a subpoena duces tecum issued to an expert witness which required the production of other reports the expert had written for the plaintiff's counsel[9]. *Id.*, 175 F.R.D. at 664. The Court noted that the scheduling order required production of information in accordance with Rule 26, including "a listing of any other cases in which the witness has testified as an expert at trial or by deposition within the preceding four years." *Id.* The defendant claimed that the other reports were necessary for impeachment purposes. *Id.* at 665. The Court, however, noted that Rule 26 does not require an expert to produce any reports from unrelated litigation, and stated the following:

> While Rule 26 does provide for broad discovery of experts as to the opinions to be offered at trial, the court finds that conclusions and opinions offered in unrelated litigation do not fall within the scope of Rule 26 discovery and "would unnecessarily burden litigation with pre-trial inquiry into facts and issues wholly irrelevant to the case at hand. Defendants' general contention that they are entitled to develop material to be used during cross-examination does not convince this court to articulate a new general rule favoring burdensome production and deposition."

*Id.* (citations omitted).

In *Surles, supra*, the plaintiff in an employment discrimination case served the defendant's economic damages expert with a subpoena seeking the production of any expert reports that he had prepared in connection with suits in which he had testified over the previous four years. *Id.* at *6. The defendant produced reports which were prepared in employment discrimination cases, but refused to produce other reports on the ground that they involved unrelated subjects. *Id.*

The Court stated that the scope of the expert disclosures to which the plaintiff was entitled is set forth in Federal Rule of Civil Procedure 26(a)(2)(B), which provided, in part, that "... a witness who is retained or specially employed to provide expert testimony ... [shall disclose] a written report ... listing [ ] any other cases in which the witness has testified as an expert at trial or by deposition within the preceding four years." *Id.* According to the Court:

> By implication, because the rule requires only the production of a list of the expert's cases, [the plaintiff] is not entitled to disclosure of the reports in those cases, regardless of their subject matter. Moreover, the fact that [the defendant] voluntarily turned over some of those reports does not mean that it should be required to turn over the balance of them.

---

[9] Note that a proper subpoena had apparently been served in that case.

18517703v1 0906185 00071

*Id.* at *7.

In *In re Air Crash Disaster at Stapleton International Airport, Denver, Colorado, On November 15, 1987*, 720 F.Supp. 1442 (D.Colo. 1988), the plaintiff objected to a request for copies of all trial and deposition transcripts of the expert prepared in other cases in which the expert testified. *Id.* at 1443. The defendants contended that they were entitled to these records for the purposes of impeachment. *Id.* at 1444. The Court disagreed, finding that the discovery of material relevant to the impeachment of an export envisioned by courts construing Rule 26 is limited to materials possessed by an expert related to the case at hand. *Id.* The Court stated that "Defendants' broad demand for materials and deposition testimony relating in any way to the experts' [experience] is beyond the appropriate scope of Rule [26]." *Id.* The Court stated that "[t]he focus of information to be gathered under the Rule, either for general understanding of an expert's position or for impeachment, is on the events giving rise to the litigation at hand and the opinions to be received in evidence during that litigation." *Id.* at 1444-45. "A finding that conclusions and opinions offered in unrelated litigation fall within the scope of Rule 26 discovery would unnecessarily burden technical litigation with pre-trial inquiry into facts and issues wholly irrelevant to the case at hand. Defendants' general contention that they are entitled to develop material to be used during cross-examination does not convince this court to articulate a new general rule favoring burdensome production and deposition." *Id.* at 1444.

Thus, the Plaintiffs can not seek documents from other files of Mr. Cowheard's for other matters, for other clients, in other cases.

D. **Incidental Issues**

Finally, the Plaintiffs remark in Note 4 that Pacific "represented that Mr. Cowheard would not opine on the recently-produced K&M documents... . However on August 17 and August 18, Defendant filed Declarations by David Cowheard... ." Once again, the Plaintiffs take statements out of context and selectively omit written communications. It is true that Pacific has no present intention of supplementing the FRCP 26 report of David Cowheard. The Declarations were presented in connection with the Plaintiffs' pending motion to serve a late accounting report [DE 90], and not for trial. See, FRCP 26(a)(2)(A). In fact, by E-mail dated August 20, 2011, 10:02 a.m., Pacific's counsel specifically advised that any opinions on the "recently produced" K&M documents by Mr. Cowheard that may be offered at trial will be

18517703v1 0906185 00071

disclosed by rebuttal report to the Plaintiffs' expert accounting report at issue in the pending motions. (Exhibit 10)

## CONCLUSION

For the foregoing reasons, Pacific Insurance Company, Ltd. respectfully requests that the Plaintiffs' motion be denied in all respects and that Pacific be awarded its expenses in accordance with FRCP 37(a)(5)(B).

Respectfully submitted,

**HINSHAW & CULBERTSON LLP**

By:   /s/ Joseph R. Miele, Jr.
Joseph R. Miele, Jr.
Florida Bar No. 426636
One East Broward Boulevard, Suite 1010
Fort Lauderdale, Florida 33301
Phone: (954) 467-7900
Fax:    (954) 467-1024
E-mail: jmiele@hinshawlaw.com
*Attorneys for Pacific Insurance Company, Ltd.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on September 13, 2011, I electronically filed the foregoing **Request for Fees and Opposition to Plaintiffs' Motion to Compel Documents and Disclosures from Defendant's Expert, David Cowheard, with Incorporated Memorandum of Law** with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following: Cyril E. Smith, Esq., David R. Atkinson, Esq., Danielle L. Lassiter, Esq. and G. Joseph Curley, Esq. (csmith@gunster.com, datkinson@gunster.com, dlassiter@gunster.com and gcurley@gunster.com), Gunster Yoakley & Stewart PA, 777 South Flagler Drive, Suite 500E, West Palm Beach, Florida 33401.

By:   /s/ Joseph R. Miele, Jr.
Joseph R. Miele, Jr.